IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

TERRA FIRMA, LLC,                         *

     Plaintiff,                          *

v.                                        *        Civil Action No. GLR-21-1357

WICOMICO COUNTY, MARYLAND,                *
et al.,
                                          *
     Defendants.

* * *

## <u>MEMORANDUM OPINION</u>

THIS MATTER is before the Court on Defendants Wicomico County, Maryland and Wicomico County Urban Service Commission's ("Wicomico County") Motion to Dismiss (ECF No. 5) and Defendant Village Downriver Condominium Association's ("VDCA") Motion to Dismiss (ECF No. 10).[1] The Motions are ripe for disposition, and no hearing is necessary. <u>See</u> Local Rule 105.6 (D.Md. 2021). For the reasons set forth below, the Court will grant the Motions in part, deny the Motions in part without prejudice, and remand the remainder of the case to state court.

---

[1] VDCA adopts and incorporates Wicomico County's Motion and does not present further argument. (<u>See generally</u> Mem. Supp. Mot. Dismiss VDCA at 1, ECF No. 10-1). Accordingly, the Court's analysis focuses on the arguments raised in Wicomico County's Motion.

## I.    BACKGROUND[2]

### A.    <u>Development Contract</u>

Plaintiff Terra Firma, LLC ("Terra Firma") is a developer that constructed a costly sewage system for the Village Downriver Condominium (the "Condo") in Wicomico County, Maryland. (Compl. ¶ 5, ECF No. 11). Terra Firma alleges that Wicomico County has infringed on its rights to the system (the "Sewer Facility") and filed a litany of claims in state court against Wicomico County and VDCA, the "governing and controlling entity" of the Sewer Facility. (<u>Id.</u> ¶¶ 5, 7). Wicomico County removed the case to this Court on federal question grounds.

Terra Firma claims that its development of the Condo has a "tortured history" because of Wicomico County's "changing, unpredictable, and arbitrary demands." (<u>Id.</u> ¶ 7). Specifically, Wicomico County required Terra Firma "to construct and fund completely the construction of a community sewerage system" as a condition of approving the Condo project. (<u>Id.</u> ¶ 6). Terra Firma initially planned to put in an on-site drain field and pre-treatment septic system that it planned to own and operate privately for some time before "eventually" shifting ownership to VDCA. (<u>Id.</u> ¶ 7). Terra Firma complains that in 2005, after it "relied on such approval and invested significant funds" toward the drain field system, Wicomico County "changed its position." (<u>Id.</u> ¶ 8). Wicomico County told Terra Firma to "design and construct a sewage treatment plant," not a drain field, that would be owned and operated by a utility company. (<u>Id.</u>). Terra Firma alleges that it became

---

[2] Unless otherwise noted, the Court takes the following facts from the Complaint (ECF No. 1) and accepts them as true. <u>See</u> <u>Erickson v. Pardus</u>, 551 U.S. 89, 94 (2007).

Wicomico County's "guinea pig" for this costly approach. (Id.). Nonetheless, Terra Firma contacted Tidewater Utilities at Wicomico County's direction and arranged for Tidewater to operate the Sewer Facility. (Id.).

Terra Firma claims that it spent around $1,000,000 for the Tidewater Utilities plant, way up from the $175,000 it had planned to spend on the drain field. (Id. ¶ 9). In 2008, Wicomico County "abruptly and arbitrarily changed course once again," telling Terra Firma that Tidewater Utilities could not own the system. (Id. ¶ 10). Instead, the Sewer Facility would be owned and operated by Terra Firma and, eventually, it would be turned over to VDCA. (Id.). Further, the Sewer Facility would be "subject to an absolute and unconditional right" that Wicomico County could "assume ownership at any time." (Id.). Terra Firma was "deeply invested" at this point "and was forced under circumstances amounting to duress to go along with" Wicomico County's "new and different (and unlawful) plan." (Id.). Terra Firma "had no reasonable choice other than to comply." (Id.). Based on the new change, Terra Firma's budget for the Sewer Facility went up again, this time to around $2,250,000. (Id. ¶ 11).

On July 31, 2008, Wicomico County, the Commission, and Terra Firma executed a "Shared Facility Agreement" ("SFA"), drafted by Wicomico County, which governed the parties' rights to the Sewer Facility. (Id. ¶ 12). Paragraph 12 of the SFA, which is executed by an authorized member of Terra Firma, states:

> The County shall have the right, at its sole discretion, to assume the operation and ownership of the sewerage system and this right can be exercised at any time by the County. This assumption of operation and ownership shall be exercised by providing written notice to [Terra Firma] or its successors at

3

> least ninety (90) days prior to the takeover of operation and
> ownership by the County. In the event of transfer of operation
> and ownership to the County, the transfer shall be without cost
> to the County and shall be free and clear of all liens and
> encumbrances.

(SFA at 10, ECF No. 11-1). The Sewer Facility became operational in 2011 and ownership passed from Terra Firma to VDCA in 2018. (Compl. ¶¶ 13–14).

On March 22, 2018, Wicomico County and VDCA, but not Terra Firma, executed an "Amended and Restated Shared Facility Agreement" ("ASFA"). (Id. ¶ 15). The ASFA "plac[ed] operational control and responsibility of the Sewer Facility in the hands of VDCA." (Id.). Terra Firma alleges that the ASFA "materially alter[ed]" its rights and interests in the Sewer Facility, including its rights to the Sewer Facility's "excess capacity." (Id.). Specifically, Terra Firma claims that the ASFA (1) allows Wicomico County and VDCA to expand the area served by the Sewer Facility to include other property without Terra Firma's consent, (id. ¶ 15(a)), and (2) permits the VDCA to accept payments for such use of the Sewer Facility, (id. ¶ 15(b)). Terra Firma alleges that the SFA and the ASFA permit Wicomico County "to take away . . . valuable property rights and interests without compensation, and to reserve and/or create for themselves contractual and property rights and interests in regard to the Sewer Facility including its excess capacity." (Id. ¶ 19).

## B.    Procedural History

On March 20, 2021, Terra Firma filed suit in the Circuit Court for Wicomico County, Maryland. (ECF No. 11); Terra Firma, LLC v. Vill. Downriver Condo. Ass'n., Inc., No. C-22-CV-21-87 (Circ.Ct.Md. 2021). Terra Firma's sixteen-count Complaint alleges claims against Wicomico County for: unjust enrichment (Count I); quantum meruit

4

(Count II); constructive fraud (Count III); declaratory judgment under § 3-406 of the Maryland Courts and Judicial Proceedings Article ("CJP") (Count IV); declaratory judgment under CJP § 3-409 (Count V); substantive due process under 42 U.S.C. § 1983 (Count VI); procedural due process under § 1983 (Count VII); equal protection under § 1983 (Count VIII); substantive due process under the Maryland Declaration of Rights (Count IX); procedural due process under the Maryland Declaration of Rights (Count X); equal protection under the Maryland Declaration of Rights (Count XI); violation of the Takings Clause (Count XII); inverse condemnation (Count XIII); violation of Chapter 97 of the Wicomico County Code (Count XIV); constructive trust (Count XV); and breach of contract (Count XVI). Terra Firma brings only the declaratory judgment claims (Counts IV & V) against VDCA. On June 1, 2021, Wicomico County removed the case to this Court. (ECF No. 1).

On June 3, 2021, Wicomico County filed its Motion to Dismiss. (ECF No. 5). The same day, VDCA filed a short Motion to Dismiss adopting Wicomico County's arguments. (ECF No. 10). On July 16, 2021, Terra Firma filed its Oppositions (ECF Nos. 20, 21). Wicomico County filed its Reply on August 13, 2021, (ECF No. 24), and VDCA filed its Reply on August 18, 2021, (ECF No. 25). Terra Firma filed amended Oppositions on October 15, 2021. (ECF No. 28).

## II.    DISCUSSION

### A.    <u>Standard of Review</u>

The purpose of a Rule 12(b)(6) motion is to "test[] the sufficiency of a complaint," not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of

defenses." King v. Rubenstein, 825 F.3d 206, 214 (4th Cir. 2016) (quoting Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999)). A complaint fails to state a claim if it does not contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed.R.Civ.P. 8(a)(2), or does not "state a claim to relief that is plausible on its face," Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. Though the plaintiff is not required to forecast evidence to prove the elements of the claim, the complaint must allege sufficient facts to establish each element. Goss v. Bank of Am., N.A., 917 F.Supp.2d 445, 449 (D.Md. 2013) (quoting Walters v. McMahen, 684 F.3d 435, 439 (4th Cir. 2012)), aff'd, 546 F.App'x 165 (4th Cir. 2013).

In considering a Rule 12(b)(6) motion, a court must examine the complaint as a whole, accept the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. See Albright v. Oliver, 510 U.S. 266, 268 (1994); Lambeth v. Bd. of Comm'rs of Davidson Cnty., 407 F.3d 266, 268 (4th Cir. 2005). But the court need not accept unsupported or conclusory factual allegations devoid of any reference to actual events, United Black Firefighters v. Hirst, 604 F.2d 844, 847 (4th Cir. 1979), or legal conclusions couched as factual allegations, Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555).

**B.** <u>Analysis</u>

**1.     Due Process, Takings, and Inverse Condemnation Claims**

Terra Firma alleges claims for violations of both substantive and procedural due process under 42 U.S.C. § 1983 and the Maryland Declaration of Rights (Counts VI, VII, IX, X), violation of the Takings Clause (Count XII), and inverse condemnation (Count XIII). The state provisions are interpreted in light of their federal analogs, meaning a given constitutional claim is analyzed the same whether it is brought under an Article of the Maryland Constitution or an Amendment to the U.S. Constitution. <u>See</u> <u>Henry v. Purnell</u>, 501 F.3d 374, 382 n.10 (4th Cir. 2007). Wicomico County argues that Terra Firma does not have a constitutionally protected property interest and therefore cannot establish a basic element of all these claims. (Wicomico County Defs.' Mem. Supp. Mot. Dismiss ["Mot."] at 16–19, ECF No. 5-1).[3] At bottom, the Court agrees and will dismiss Counts VI, VII, IX, X, XII, and XIII.

Terra Firma's due process, takings, and inverse condemnation claims all require a showing of a protected property interest. A claim for a violation of substantive due process requires a plaintiff to show "(1) <u>that they had property or a property interest</u>; (2) that the state deprived them of this property or property interest; and (3) that the state's action falls so far beyond the outer limits of legitimate governmental action that <u>no process</u> could cure the deficiency." <u>Sylvia Dev. Corp. v. Calvert Cnty.</u>, 48 F.3d 810, 827 (4th Cir. 1995) (first

---

[3] Citations to page numbers in the pleadings refer to the pagination assigned by the Court's Case Management/Electronic Case Files ("CM/ECF") system.

emphasis added). To succeed on a procedural due process claim, a plaintiff must show that "(1) he had a property interest; (2) of which he was deprived by the county; (3) without due process of law." Ihnken v. Garden, 927 F.Supp.2d 227, 236 (D.Md. 2013) (emphasis added). Further, takings claims require a showing of a property interest. Student "B" v. Howard Cnty. Cmty. Coll., 512 F.Supp.3d 610, 618 (D.Md. 2021) ("To state a valid takings claim, Plaintiff must first identify a valid property interest."). Finally, to support an inverse condemnation claim, a plaintiff must show that there was "an intent on the part of the defendant to take plaintiff's property or an intention to do an act the natural consequence of which was to take its property." Nazelrod v. Garrett Cnty. Sanitary Dist., Inc., 241 F.Supp.2d 532, 537 (D.Md. 2003) (quoting Columbia Basin Orchard v. United States, 132 F.Supp. 707, 709 (Ct. Cl. 1955)).

"[O]ne can only be deprived of a constitutionally protected property interest if one had such an interest to begin with." Siena Corp. v. Mayor of Rockville, 873 F.3d 456, 461 (4th Cir. 2017). "[T]he Fourteenth Amendment itself does not create property interests." Gardner v. City of Balt., 969 F.2d 63, 68 (4th Cir. 1992); Tri Cnty. Paving, Inc. v. Ashe Cnty., 281 F.3d 430, 436 (4th Cir. 2002). Instead, they are created by existing rules or understandings from an independent source like state law. Tri Cnty., 281 F.3d at 436 (quoting Bd. of Regents of State Colleges v. Roth, 408 U.S. 564, 577 (1972)). In order "to have a property interest in a benefit, a person must have a 'legitimate claim of entitlement to it.'" Id. (quoting Roth, 408 U.S. at 577); Rockville Cars, LLC v. City of Rockville, 891 F.3d 141, 148 (4th Cir. 2018). An "abstract need or desire for it" or "a unilateral expectation of it" is not enough. Tri Cnty., 281 F.3d at 436 (quoting Roth, 408 U.S. at 577).

Terra Firma claims it has an entitlement "in regard to the Sewer Facility, including its rights as to the Sewer Facility's excess capacity." (Pl.'s Resp. Opp'n Mot. Dismiss Wicomico County Defs. ["Opp'n"] at 11, ECF No. 20-1). That doesn't appear to be so. Wicomico County points to public records to which Terra Firma was a party as proof that Terra Firma does not own the Sewer Facility. (Mot. at 9). The Condominium Declaration and By-Laws ("Declaration"),[4] which were recorded on September 4, 2008, state that the unit owners own the common elements of the property:

> (a) <u>In General</u>. All areas and facilities which are not part of a unit comprise the common elements of the Condominium. <u>The common elements shall be exclusively owned in common by all of the unit owners.</u>

(Decl. By-Laws VDCA ["Condo Decl."] at 5, ECF No. 5-4 (emphasis added)).[5] The "general common elements" include the wastewater system:

---

[4] The Condominium Declaration and By-Laws are recorded in the Wicomico County land records at Liber No. 2962, Folio 333-381. (<u>See</u> Condo Decl. at 1–49; Mot. at 9).

[5] Ordinarily, a court may not consider extrinsic evidence when resolving a Rule 12(b)(6) motion. <u>See</u> Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC, 794 F.Supp.2d 602, 611 (D.Md. 2011). But this general rule is subject to several exceptions. First, a court may consider documents attached to the complaint, <u>see</u> Fed.R.Civ.P. 10(c), as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic, <u>see</u> Blankenship v. Manchin, 471 F.3d 523, 526 n.1 (4th Cir. 2006). Second, a court may consider documents referred to and relied upon in the complaint—"even if the documents are not attached as exhibits to the complaint." Fare Deals Ltd. v. World Choice Travel.com, Inc., 180 F.Supp.2d 678, 683 (D.Md. 2001). Third, a Court may consider matters of public record. Philips v. Pitt Cnty. Mem. Hosp., 572 F.3d 176, 180 (4th Cir. 2009). In the event that any of these properly considered extra-pleading materials conflict with the "bare allegations of the complaint," the extra-pleading materials "prevail." Fare Deals, 180 F.Supp.2d at 683; accord RaceRedi Motorsports, LLC v. Dart Mach., Ltd., 640 F.Supp.2d 660, 664 (D.Md. 2009). As the Declaration is a public record, the Court may consider it in ruling on this Motion to Dismiss.

> [T]he general common elements shall include: . . . the wastewater treatment system and all of its components, facilities and appurtenances and including any building in which any part of it is enclosed, together with any and all drain or dosing fields, holding tanks or storage ponds, open space or other areas associated therewith.

(Id.). And the unit owners own the common elements at an undivided percentage interest:

> Each owner owns a percentage (1/49) interest in the Sewer Facility: Each unit owner shall own an undivided percentage interest in the common elements, common expenses and common profits equal to that set forth in the schedule attached hereto as "Exhibit B."

(Id. at 7–8). Exhibit B to the Declaration, in turn, states:

> Each unit in the Condominium shall have the same percentage interest in the common elements, common expenses and common profits as every other unit therein. The percentage interest of each unit in the Condominium regime is hereby declared to be . . . 1/49 or 2.0408 percent.

(Id. at 20).

Accordingly, the Declaration stipulates that the Sewer Facility is a common element and that all common elements are owned by the unit owners in shares of a 1/49th joint ownership interest. Thus, the public records do not suggest that Terra Firma has a dedicated ownership interest in the Sewer Facility, except to the extent that Terra Firma might own individual condo units.

Terra Firma does not address the land records in its response. (See Opp'n at 10–14). Nor does it direct the Court to any other evidence or factual support to indicate that it has

---

Here, Defendants enclose a copy of the CAP Instrument to their Motion to Dismiss. Davis clearly refers to and relies on in the CAP Instrument in the Complaint. Accordingly, the Court may consider the document as part of its review of Defendants' Motion.

a property interest. Instead, it offers conclusory, unsupported allegations that it owns the Facility:

> Plaintiff has plainly and clearly alleged in its Complaint more than an abstract need or desire for something or a unilateral expectation as to something—it has alleged a claim of entitlement, specifically, rights and interests in regard to the Sewer Facility, including its rights as to the Sewer Facility's excess capacity.

(Id. at 11). Terra Firma's mere repetition that it has a property interest does not create one, particularly in the face of public records directly contradicting its position. See Fare Deals, 180 F.Supp.2d at 683 (holding that when properly considered extra-pleading materials conflict with the "bare allegations of the complaint," the extra-pleading materials "prevail").

Accordingly, Terra Firma does not state a claim for violation of substantive due process, procedural due process, takings, or inverse condemnation. The Court will grant Wicomico County's Motion as to Counts VI, VII, IX, X, XII, and XIII.

### 2.    Equal Protection Claims

Next, Terra Firma alleges claims for equal protection under § 1983 and the Maryland Declaration of Rights. (Counts VIII & XI). Wicomico County argues that Terra Firma fails to state a claim because it has not pleaded that Wicomico County treated it differently than other similarly situated developers. (Mot. at 21). The Court agrees and will dismiss Counts VIII and XI.

"The purpose of the equal protection clause of the Fourteenth Amendment is to secure every person within the State's jurisdiction against intentional and arbitrary

discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents." Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000) (quoting Sioux City Bridge Co. v. Dakota Cnty., 260 U.S. 441, 445 (1923)). The Supreme Court has held that a "class of one" can make an equal protection claim "where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." Olech, 528 U.S. at 564; accord Quinn v. Bd. of Cnty. Comm'rs for Queen Anne's Cnty., 124 F.Supp.3d 586, 598 (D.Md. 2015).

Here, Terra Firma does not even allege in its Complaint that it was treated differently from other similarly situated developers, let alone identify any facts in support of such a claim. (See Compl. ¶¶ 51–56, 70–76). In its Opposition, however, Terra Firma asserts that it "has adequately pleaded equal protection claims based not only on the express allegations of the Complaint but also reasonable inferences to be drawn therefrom." (Opp'n at 17). It then argues that the Court could infer that Terra Firma was treated differently from other similarly situated developers from its Complaint:

> [I]t can be fairly construed from the Complaint that Plaintiff was treated differently from other developers and property owners in regard to the Sewer Facility, the changing and inconsistent requirements and conditions imposed upon Plaintiff, and ultimately the County's conduct toward Plaintiff vis-à-vis the ASFA and what it purports to take away from Plaintiff.

(Id.). Terra Firma's sparse allegations are utterly insufficient to demonstrate differential treatment. The Court declines to take Terra Firma's logical leap and infer that Terra Firma was treated differently with no factual basis in support. Further, even if Terra Firma alleged

sufficient facts to show it was treated differently, its claim still fails because it has not shown that said discrimination was the result of purposeful discrimination. See Quinn, 124 F.Supp.3d at 598 n.8 (indicating that Olech requires not only a showing of differential treatment, but that the differential treatment resulted from purposeful discrimination). Accordingly, the Court will dismiss Counts VIII and XI.

### 3.    Quasi-Contract Claims

Terra Firma alleges claims for unjust enrichment and quantum meruit. (Counts I & II). Here, the existence of an express contract precludes Terra Firma's quasi-contract claims. "[U]njust enrichment and quantum meruit, both 'quasi-contract' causes of action, are remedies to provide relief for a plaintiff when an enforceable contract does not exist but fairness dictates that the plaintiff receive compensation for services provided." J.E. Dunn Constr. Co. v. S.R.P. Dev. Ltd. P'ship, 115 F.Supp.3d 593, 608 (D.Md. 2015) (quoting Cnty. Comm'rs of Caroline Cnty. v. J. Roland Dashiell & Sons, Inc., 747 A.2d 600, 608 (Md. 2000)). "In Maryland, '[t]he general rule is that no quasi-contractual claim can arise when a contract exists between the parties concerning the same subject matter on which the quasi-contract claim rests.'" Id. (quoting J. Roland Dashiell & Sons, Inc., 747 A.2d at 607). Although a plaintiff is permitted to plead in the alternative and assert claims for unjust enrichment and breach of contract, in that case the "plaintiff's claim for unjust enrichment must include an allegation of fraud or bad faith in the formation of the contract." Id. (quoting Jones v. Pohanka Auto N., Inc., 43 F.Supp.3d 554, 573 (D.Md. 2014)). Further, quantum meruit is unavailable where there is an express contract dealing

with the disputed issue. Id. (quoting Abt Assocs., Inc. v. JHPIEGO Corp., 104 F.Supp.2d 532, 534 (D.Md. 2000)).

It is undisputed that there are two written contracts that address the Sewer Facility's ownership and operation. Moreover, Terra Firma does not allege that there was any fraud or bad faith in the formation of the SFA or ASFA. Accordingly, Terra Firma cannot recover under quantum meruit or unjust enrichment. The Court will dismiss Counts I and II.

### 4.   Breach of Contract Claim

Next, Terra Firma asserts a claim for breach of contract against Wicomico County. (Count XVI). Wicomico County argues that Terra Firma's breach of contract claim is time-barred. Terra Firma responds that Wicomico County's breach of the SFA is "continuing" in nature and therefore the statute of limitations has not yet begun to run. Again, the Court agrees with Wicomico County.

Section 5-5A-02(c) of Maryland's Courts and Judicial Proceedings Article provides that a breach of contract claim "is barred unless the claimant files suit within the later of 1 year after: (1) The date on which the claim arose; or (2) The date of completion of the contract that gave rise to the claim." Further, "a cause of action for breach of contract accrues when the contract is breached, and when the 'breach was or should have been discovered.'" Balt. Scrap Corp. v. Exec. Risk Specialty Ins. Co., 388 F.Supp.3d 574, 588 (D.Md. 2019) (quoting Boyd v. Bowen, 806 A.2d 314, 444 (2002)).

Here, Terra Firma alleges that Wicomico County breached the SFA "[b]y signing the ASFA." (Compl. ¶ 92). The ASFA was signed on March 22, 2018. (ASFA at 1, ECF No. 5-3). As such, the statute of limitations for a breach of contract claim against Wicomico

14

County ran on March 22, 2019, a year later. Terra Firma did not file its Complaint until March 20, 2021, nearly two years after the limitations period ended. (Compl. at 1).

Terra Firma argues that its breach of contract claim is not time-barred because Wicomico County is breaching the SFA in a "continuing way" and therefore the contract has not "completed" under § 5-5A-02. Terra Firma offers no case law to support its interpretation, and the Court is unpersuaded. Terra Firma's tortured read of § 5-5A-02 would have the effect of eliminating the limitations period altogether and is in conflict with the statute's plain meaning. See United States ex rel. Joslin v. Cmty. Home Health of Md., Inc., 984 F.Supp. 374, 381 (D.Md. 1997) ("The starting point for interpreting a Maryland statute is the statutory language. If the language is clear and consistent with the statutory purpose, and does not produce an absurd result, further exploration is unnecessary."). As such, Terra Firma filed its Complaint two years too late. The Court will dismiss Count XVI.

### 5.   Constructive Fraud

Next, Terra Firma alleges a claim for constructive fraud. (Count III). Wicomico County argues that Terra Firma's claim is barred because Terra Firma did not plead that it provided notice of its claim in accordance with the Local Government Tort Claims Act ("LGTCA"). (Mot. at 35); see CJP § 5-304. Terra Firma responds that the notice provisions of the LGTCA don't apply to its "non-tort claims or federal constitutional torts." (Opp'n at 21). The Court agrees with Wicomico County and will dismiss the claim.

The tort of constructive fraud is defined as a "breach of a legal or equitable duty which, irrespective of moral guilt of the fraud feasor, the law declares fraudulent because

of its tendency to deceive others, to violate public or private confidence, or to injure public interests." UBS Fin. Servs., Inc. v. Thompson, 94 A.3d 176, 186 (Md.Ct.Spec.App. 2014) (quoting Canaj, Inc. v. Baker & Division Phase III, LLC, 893 A.2d 1067 (2006)), aff'd, 115 A.3d. 125 (Md. 2015). Section 5-304(a) of the Local Government Tort Claims Act states that "an action for unliquidated damages may not be brought against a local government or its employees unless the notice of the claim required by this section is given within 180 days after the injury." Notice is a condition precedent to maintain an action for damages against a local government and "compliance with the notice provision should be alleged in the complaint as a substantive element of the cause of action." Bibum v. Prince George's Cnty., 85 F.Supp.2d 557, 564 (D.Md. 2000); Hansen v. City of Laurel, 25 A.3d 122, 131 (Md. 2011) (stating that Maryland precedent "require[s] that tort claimants plead affirmatively, albeit generally, . . . the LGTCA notice requirement").

Here, Terra Firma needed to both provide notice and plead compliance. It has done neither. Nonetheless, Terra Firma argues, among other things, that the Court can maintain this action despite its failures under the LGTCA. CJP § 5-304(d) states:

> Notwithstanding the other provisions of this section, unless the defendant can affirmatively show that its defense has been prejudiced by lack of required notice, upon motion and for good cause shown the court may entertain the suit even though the required notice was not given.

(emphasis added). Terra Firma claims that "there is no prejudice to County Defendants" and that, "[t]o the extent that notice requirement applies to any of Plaintiff's claims, it should be waived by the Court and suit should be allowed to proceed." (Opp'n at 22). But

Terra Firma has not bothered to make a motion as required by the statute. Instead, it insists the Court should allow the case to proceed solely by virtue of its authority to do so.

The Court is unpersuaded. Even if there was no prejudice to Wicomico County, Terra Firma has not shown good cause for its failure to comply with the notice provisions. The Court has explained that good cause in the context of the LGTCA's notice requirements is a test "of ordinary prudence, that is, whether the claimant prosecuted his claim with that degree of diligence that an ordinarily prudent person would have exercised under the same or similar circumstances." See Downey v. Collings, 866 F.Supp. 887, 889–90 (D.Md. 1994) (quoting Madore v. Balt. Cnty., 367 A.2d 54, 57 (Md.Ct.Spec.App. 1976)). Terra Firma provides no explanation for its lack of notice, let alone good cause. The Court declines to entertain Terra Firma's claims despite its many oversights—Terra Firma failed to provide notice, failed to plead that it provided notice, failed to make a § 5-304(d) motion, and failed to show good cause. See Downey, 866 F.Supp. at 889–90 (dismissing plaintiff's claim after he failed to provide LGTCA notice or show good cause for said failure).[6] The Court will dismiss Count III.

---

[6] The Court notes that Terra Firma raises a misplaced argument here to avoid Wicomico County's sovereign immunity. (Opp'n at 23). Specifically, Terra Firma contends that "there are factual issues precluding dismissal . . . as to whether the case implicates proprietary as opposed [to] governmental functions." (Opp'n at 24). The Court need not address this argument, however, because even if Wicomico County lacks sovereign immunity with regard to these claims, Terra Firma's failure to comply with the LGTCA leaves it unable to maintain its state tort claims.

### 6.      County Code Violations

Terra Firma alleges a claim for violations of Sections 97-17 and 97-18 of the Wicomico County Code. (Count XIV; Compl. ¶¶ 85–88). Wicomico County argues that the Court should dismiss the claim because the County Code does not provide for a private cause of action. (Mot. at 37–38). Terra Firma responds summarily that "a right of action is plainly implied." (Opp'n at 25). Terra Firma is wrong.

Chapter 97 of the Wicomico County Code is titled "Urban Service Districts." (Wicomico County Code, Chapter 97 at 1, ECF No. 5-5). Section 97-17 of the County Code, entitled "Acquisition of existing systems," states:

> The Commission is authorized and empowered to purchase or acquire by gift any existing water or sewerage systems in Wicomico County, or any other water or sewerage systems only partially in said county, which in its judgment are desirable or necessary for the purpose of providing adequate water or sewerage service, or both, for the residents of said county. The Commission is further authorized to purchase or acquire by gift any installations or equipment necessary or useful in the maintenance or operation of any existing urban service operating in said county.

(Id. at 13). Section 97-18, entitled "Procedure for acquisition of existing systems," is a longer subsection outlining the procedures for obtaining water or sewerage systems, extending the County's system, and allowing for joint ownership of sewerage systems. (Id. at 13–14).

The Maryland Court of Appeals has explained how to assess whether a statute contains an implied private right of action:

> A private cause of action in favor of a particular plaintiff or class of plaintiffs does not exist simply because a claim is

18

> framed that a statute was violated and a plaintiff or class of
> plaintiffs was harmed by it. Rather, the issue is a matter of
> statutory construction.

Fangman v. Genuine Title, LLC, 136 A.3d 772, 779 (Md. 2016) (quoting Baker v.

Montgomery Cnty., 50 A.2d 1112, 1122–23 (Md. 2012)). The Supreme Court created the

following test to determine whether a statute implicitly creates a private cause of action:

> In determining whether a private remedy is implicit in a statute
> not expressly providing one, several factors are relevant. First,
> is the plaintiff one of the class for whose especial benefit the
> statute was enacted[?] Second, is there any indication of
> legislative intent, explicit or implicit, either to create such a
> remedy or to deny one? Third, is it consistent with the
> underlying purposes of the legislative scheme to imply such a
> remedy for the plaintiff?

Id. (quoting Cort v. Ash, 422 U.S. 66, 78 (1975)). The Court of Appeals has repeatedly

applied this test. See id. at 779–82 (citing cases).

Here, Terra Firma does not offer argument regarding any implied right of action.

Rather, Terra Firma merely sets out the test identified in Cort and states, "Plaintiff submits

that, under that test, a right of action is plainly implied." (Opp'n at 25). "Submitting" an

argument is not the same as making one, and the Court will not do so on Terra Firma's

behalf. See United States v. Davis, 622 F.App'x 758, 759 (10th Cir. 2015) ("[I]t is not this

court's duty, after all, to make arguments for a litigant that he has not made for himself.");

Wootten v. Virginia, 168 F.Supp.3d 890, 895–96 (W.D.Va. 2016) ("[C]ourts widely agree

that parties have the burden to present legal arguments in the first instance." (citing cases)).

Accordingly, the Court finds that the plain language of Sections 97-17 and 97-18 does not

expressly provide for a private right of action and that Terra Firma has failed to provide

any support for its contention that a right of action is "plainly implied." Thus, the Court will dismiss Count XIV.[7]

### 7. Declaratory Judgment

Finally, Terra Firma asserts claims for declaratory judgment under CJP §§ 3-406 and 3-409. (Counts IV, V; Compl. ¶¶ 34–39). Specifically, Terra Firma asks the Court to "determine and adjudicate the rights and liabilities of the parties"; to declare that "in the event" that Wicomico County "seizes or is deemed to have seized ownership or parties ownership of the Sewer Facility, fair compensation" should be provided to Terra Firma; and to state that certain provisions of the SFA and ASFA "are unlawful." (Compl. ¶¶ 35(A)–(C)), 39(A)–(C)). Wicomico County argues that there is no controversy of sufficient immediacy and reality to make declaratory relief appropriate. (Mot. at 44). The Court finds that it does not possess an independent basis for jurisdiction regarding the declaratory judgment claims and will remand the remainder of the case to state court for resolution.

The Court has discretion to hear a declaratory judgment action if the relief sought (1) "will serve a useful purpose in clarifying and settling the legal relations in issue"; and (2) "will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." First Nationwide Mortg. Corp. v. FISI Madison, LLC, 219 F.Supp.2d 669, 672 (D.Md. 2002) (quoting Cont'l Cas. Co. v. Fuscardo, 35 F.3d 969, 965

---

[7] Terra Firma also asserts a claim for constructive trust. (Count XV). "A constructive trust is an equitable remedy, not a cause of action in itself." Chassels v. Krepps, 174 A.3d 896, 904 (Md.Ct.Spec.App. 2017). Accordingly, the Court will dismiss Count XV.

(4th Cir. 1994)). The Court assesses the following factors in determining whether it should

exercise jurisdiction to award declaratory relief:

> (1) the complaint must allege an "actual controversy" between the parties "of sufficient immediacy and reality to warrant issuance of a declaratory judgment;" (2) <u>the court must possess an independent basis for jurisdiction over the parties</u>; and (3) the court must decide whether to exercise its discretion to determine or dismiss the action.

<u>Proa v. NRT Mid Atl., Inc.</u>, 477 F.Supp.2d 677, 680 (D.Md. 2007) (emphasis added)

(quoting <u>Volvo Constr. Equip. N. Am., Inc. v. CLM Equip. Co.</u>, 386 F.3d 581, 592 (4th

Cir. 2004)). District courts "have great latitude in determining whether to assert jurisdiction

over declaratory judgment actions, but should refuse to entertain a declaratory judgment

only for good cause." <u>First Nationwide Mortg. Corp.</u>, 219 F.Supp. at 672 (quoting <u>Aetna

Cas. & Surety Co. v. Quarles</u>, 92 F.2d 321, 324 (4th Cir. 1937)).

    Federal district courts "have original jurisdiction of all civil actions arising under

the Constitution, laws, or treaties of the United States" under 28 U.S.C. § 1331, as well as

those "where the matter in controversy exceeds the sum or value of $75,000, exclusive of

interest and costs, and is between . . . citizens of different States" under 28 U.S.C.

§ 1332(a). Wicomico County premised the removal on federal question jurisdiction.

(Notice Removal at 1, ECF No. 1-1 (citing 28 U.S.C. §§ 1331, 1441, 1446)).

    Federal courts are courts of limited jurisdiction and "may not exercise jurisdiction

absent a statutory basis." <u>Exxon Mobil Corp. v. Allapattah Servs., Inc.</u>, 545 U.S. 546, 552

(2005). "A court is to presume, therefore, that a case lies outside its limited jurisdiction

unless and until jurisdiction has been shown to be proper." <u>United States v. Poole</u>, 531 F.3d

263, 274 (4th Cir. 2008) (citing Kokkonen v. Guardian Life Ins. Co., 511 U.S. 375, 377 (1994)). "[B]efore a federal court can decide the merits of a claim, the claim must invoke the jurisdiction of the court." Miller v. Brown, 462 F.3d 312, 316 (4th Cir. 2006).

Here, Terra Firma no longer has any surviving claims under federal law. Further, all parties in this case are citizens of or entities organized within the State of Maryland. (See Compl. at 1). Accordingly, the Court does not have an independent source of jurisdiction to hear the declaratory judgment claims. See Proa, 477 F.Supp.2d at 680. Thus, the Court will remand the case back to the Circuit Court for Wicomico County for resolution of the final two claims, declaratory judgment under CJP §§ 3-406 and 3-409 (Counts IV & V).

### III.    CONCLUSION

For the foregoing reasons, the Court will grant Defendants' Motions to Dismiss (ECF Nos. 5, 10) as to Terra Firma's claims for: quasi-contract (Counts I & II); constructive fraud (Count III); due process and equal protection under 42 U.S.C. § 1983 and the Maryland Declaration of Rights (Counts VI, VII, VIII, IX, X, XI); violation of the Takings Clause (Count XII); inverse condemnation (Count XIII); violation of the Wicomico County Code (Count XIV); constructive trust (Count XV); and breach of contract (Count XVI). The Court will deny Defendants' Motions as to the declaratory judgment claims (Counts IV & V) without prejudice. As the Court does not have jurisdiction to resolve the declaratory judgment claims, the Court will remand this action to state court. A separate

Order follows.

Entered this 28th day of March, 2022.

                                       /s/
                              George L. Russell, III
                              United States District Judge